<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| RUDOLPH BEU, IV,  :<br><br>       Plaintiff,  :<br><br>       v.  :<br><br>CITY OF VINELAND, *et al.*,  :<br><br>       Defendants.  : | Civil No. 20-02510 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon several motions: (1) Policeman's Benevolent Association Local ("PBA's") Motion to Dismiss (Doc. 3); (2) Todd Gelfand's Motion to Dismiss (Doc. 17); (3) City of Vineland, Anthony Fanucci, Gregory Pacitto, Edwin Alicea, Ronald DeMarchi, Richard Tonetta, David Cavagnaro, and Craig Scarpa ("City Defendants'") Motion to Dismiss (Doc. 23); and (4) Plaintiff's Motion to Amend Complaint (Doc. 37).

For the reasons stated herein, (1) PBA's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; (2) Todd Gelfand's Motion to Dismiss is **GRANTED**; (3) the Motion to Amend is **GRANTED**; (4) and the City Defendant's Motion to Dismiss is **DENIED AS MOOT**.

## I.  BACKGROUND

### A.  Overview

This action arises out of an employment dispute. Plaintiff is Rudolph Beu, the Chief of Police for the Vineland City Police Department during the relevant time period. The Complaint names twelve defendants: Police Benevolent Association, the City of Vineland, Anthony Fanucci

(Mayor of the City of Vineland), Gregory Pacitto (Sergeant), Edwin Alicea (Director of Public Safety), Ronald DeMarchi (Sergeant), Todd Gelfand (private attorney retained by the City of Vineland), Richard Tonetta (Solicitor), David Cavagnaro (Patrolman), Craig Scarpa (Lieutenant), and retired police officers Nicholas Maslanich and Vincent DoNoflio. In short, Chief Beu alleges that the Defendants committed numerous acts of retaliation against Chief Beu after he reported unlawful and unethical acts that he observed while working at the Vineland Police Department. Chief Beu alleges that these "retaliatory acts deprived" him of rights secured under the "First and Fourteenth Amendments . . . and the laws of the United States and the State of New Jersey." (*Id.* ¶1.) Chief Beu brings claims for (1) violation of 42 U.S.C. § 1983 ("section 1983"); (2) violation of New Jersey's Conscientious Employee Protection Act ("CEPA"); (3) conspiracy; and (4) defamation.

### B. Chief Beu's Reports

Chief Beu alleges that, over the past five years, he has reported a series of illegal and unethical practices by other Vineland Police Department and City employees. The relevant reports are as follows. First, in 2015, Chief Beu reported that several other police officers had embezzled funds from the Vineland Police Department for personal use. (Compl. ¶¶29–30.) Chief Beu reported this activity to the City of Vineland Business Administrator, the City Director of Public Safety, and the Cumberland County Prosecutor's Office. (*Id.* ¶31.) Second, in 2016, Chief Beu reported to investigative authorities that the Vineland Police Department Street Crimes Unit had engaged in a pattern and practice of improper conduct, including illegal strip searches, cavity searches, and false reports. (*Id.* ¶¶47–49.) Third, in 2017, Chief Beu reported that the City's Director of Public Safety, Defendant Alicea, had worked with the Mayor, Defendant Fanucci and the Solicitor, Defendant Tonetta, to cover up embezzlement by Vineland Police Department

officers. (*Id.* ¶35.) Fourth, between November 2018 and September 2019, Chief Beu reported to the Cumberland County Police Department and the New Jersey Attorney General that the City of Vineland had engaged in insurance fraud and had submitted fraudulent documents to the state health benefits program. (*Id.* ¶83.)

### C.  Allegations of Retaliation

Chief Beu alleges that after he reported the aforementioned activity, Defendants began retaliating against him. The acts of retaliation are summarized as follows. First, Chief Beu contends that several members of upper police management berated and harassed Chief Beu. (*Id.* ¶¶29–36.) Chief Beu also contends that Mayor Fanucci refused to sign Chief Beu's evaluation to end his probation period as Chief of Police. (*Id.* ¶¶59, 69.) PBA created a draft complaint against Chief Beu, which Beu contends contained false allegations stating that Beu had committed criminal acts. (*Id.* ¶85–91.) Chief Beu contends that the Vineland Police Department retained Mr. Gelfand to conduct a sham investigation related to the PBA draft complaint. (*Id.* ¶¶92–94, 98–100, 141.) Chief Beu alleges that he was subject to defamatory statements published in several newspapers that included false allegations against him. (*Id.* ¶¶111–23, 166.) Chief Beu asserts that the Defendants filed false complaints against him with the Cumberland County Prosecutor's Office in an effort to force him to retire. (*Id.* ¶¶101–03, 107.) Chief Beu alleges that the City failed to negotiate with him in good faith regarding his employment contract in an effort to force him to retire. (*Id.* ¶¶142–54.) Chief Beu asserts that another officer filed a civil suit against him, falsely alleging that Chief Beu made comments about promoting the officer in exchange for sexual relations with his wife and daughter. (*Id.* ¶¶135–40.) Finally, Beu alleges that the Vineland Police Department suspended him with a proposed demotion due to the allegations from the other officer, his refusal to turn over certain files, and an alleged conflict of interest. (*Id.* ¶¶154–64.)

### D. Allegations Specific to PBA

Chief Beu's Complaint contains several allegations specific to PBA's conduct. The Complaint avers that PBA is the "police union . . . that represents the police personnel employed by the City of Vineland." (*Id.* ¶10.) Chief Beu alleges that "members of PBA Local 266 interfer[ed] with the department's disciplinary process by lobbying high ranking City officials . . . to reduce and/or eliminate penalties imposed by Chief Beu[.]" (*Id.* ¶54.) "[T]hose who sided with PBA Local 266 were commended and given rewards and promotions, while those who opposed PBA Local 266 in any way were subjected to harassment and retaliatory acts." (*Id.* ¶57.) A law firm sent a letter on behalf of PBA in "an effort to pressure Chief Beu to lessen discipline[.]" (*Id.* ¶75.) Chief Beu alleges that PBA's "letter was an effort by PBA . . . to coerce and threaten Chief Beu to make [other officers] stop performing their duties." (*Id.* ¶77.) PBA also drafted a complaint naming Chief Beu and two other officers as "Defendants." (*Id.* ¶85.) This draft complaint "contained numerous false and incorrect allegations regarding Chief Beu . . . falsely alleging that Chief Beu had committed criminal acts." (*Id.* ¶87.) This draft complaint "was intended to intimidate Chief Beu . . . and force out Chief Beu." (*Id.* ¶89.) Thereafter, "in June of 2019, in an effort to further retaliate against Chief Beu through harassment and intimidation, and attempting to force him to retire, City management, in collusion with PBA . . . began filing complaints with the CCPO against Chief Beu." (*Id.* ¶101.) The CCPO later determined that "there was no evidence to demonstrate any criminal violations by Chief Beu." (*Id.* ¶105.) Chief Beu also alleges that "[c]ity management, in collusion with PBA . . . leaked" defamatory information to several news organizations "in an egregious and coordinated effort to discredit Chief Beu and force him to resign." (*Id.* ¶117.)

### E. Allegations Specific to Mr. Gelfand

The Complaint contains few allegations specific to Mr. Gelfand. The Complaint avers that Mr. Gelfand is "a private lawyer paid by the City of Vineland who conspired with other Defendants . . . to suspend and demote Chief Beu, to place pressure on Chief Beu to resign, to reduce Chief Beu's pay, [to] unfairly negotiate his contract, . . . and to smear Chief Beu's reputation." (*Id.* ¶15.) Mr. Gelfand became involved in 2019, when "Mr. Tonetta contacted Chief Beu and informed him that Todd Gelfand," who was the "counsel for the insurance carrier, had been directed to investigate the allegations set forth in" PBA's draft complaint. (*Id.* ¶92.) Mr. Tonetta also informed Chief Beu that "Mr. Gelfand had been assigned to investigate Chief Beu's multiple CEPA complaints of retaliation." (*Id.* ¶93.) However, in May 2019, "Mr. Gelfand informed Plaintiff that he was not, in fact, investigating Chief Beu's multiple complaints of retaliation, and further, that he was not hired by the insurance carrier. Instead, Mr. Gelfand explained that he had been hired by the City of Vineland and only answered to Mr. Tonetta and Mr. Fanucci." (*Id.* ¶94.) Mr. Gelfand requested Internal Affairs files from Chief Beu, which Chief Beu refused to hand over. (*Id.* ¶¶95, 97.) Chief Beu contends that the City "maintained the appointment of Mr. Gelfand to conduct a sham investigation in violation of N.J.S.A. 40A:14-181." (*Id.* ¶98.)

## II.   LEGAL STANDARD

### A.  Motion to Amend

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a). Under Rule 15(a)(1), a "party may amend its pleadings once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Rule 15(a)(2) states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

### B.  Motion to Dismiss

When evaluating a **motion** to **dismiss** under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a **motion** to **dismiss** if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### C.  Section 1983 Claims

Section 1983 allows a plaintiff to bring a private cause of action for certain violations of his constitutional rights. Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

In order to state a claim for relief under section 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution or laws of the United States"; and (2) "the

alleged deprivation was committed or caused by a *person* acting under color of state law." *Renwick v. U.C. Med. Dept.*, No. 10-6272, 2011 WL 1883810, at *2 (D.N.J. May 11, 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### D. CEPA Claims

The New Jersey Conscientious Employee Protection Act prohibits employers from taking any retaliatory action against an employee who reports on suspected illegal activity. N.J.S.A. 34:19-3. "However, CEPA only prohibits retaliatory action against employees by their employers." *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 406 (D.N.J. 2008). CEPA defines "employer" as the following:

> [A]ny individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof.

N.J.S.A. § 34:19–2(a).

## III.   DISCUSSION

### A. Motion to Amend

Chief Beu seeks to amend his Complaint as a matter of right. The Motion to Amend is unopposed. The Court notes that Chief Beu filed his initial Complaint on March 6, 2020. (Doc. 1.) PBA filed its Motion to Dismiss on March 16, 2020. (Doc. 3, "PBA Mot. to Dismiss.") Mr. Gelfand filed his Motion to Dismiss on April 17, 2020. (Doc. 17, "Gelfand Mot. to Dismiss.") Both of those Motions have been fully briefed and are ripe for disposition based on the initial Complaint. However, on May 26, 2020, the City Defendants filed a Motion to Dismiss the Complaint. (Doc. 23, "City Defendants Mot. to Dismiss.") Thereafter, within 21 days, Chief Beu filed an Amended

Complaint as of right. (Doc. 27.) Although that filing had procedural deficiencies, the Court allowed Chief Beu to refile, and on July 14, 2020, Chief Beu filed the present Motion to Amend with a proposed Amended Complaint. Chief Beu contends that he may amend as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Under this Rule, a party may amend its complaint within 21 days after service of a motion under Rule 12(b). Courts have held that "[i]n cases involving multiple defendants, the 21-day operates only as to those defendants that have filed a responsive pleading or eligible motion under Rule 12." *Am. Realty Investors, Inc. v. Prime Income Assett Mgmt., LLC*, No. 13-00278, 2013 WL 5663069, at *6 (D. Nev. Oct. 15, 2013). Accordingly, "if there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." *Id.*

Because the City Defendants had not yet served a responsive pleading, Chief Beu was permitted to amend as of right, as to the City Defendants. Thus, the Court **GRANTS** the Motion to Amend the Complaint. The Court recognizes that "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Thus, any subsequent motion made by an opposing party should be directed at the amended pleading. *See, e.g.*, *Katona v. Asure*, No. 11-1817, 2013 WL 458464, at *1 (M.D. Pa. Feb. 6, 2013) (dismissing as moot pending motions to dismiss after granting plaintiff leave to amend complaint). Accordingly, the Court **DENIES AS MOOT** the City Defendants' Motion to Dismiss (Doc. 23) **WITHOUT PREJUDICE**.

### B.  PBA's Motion to Dismiss

PBA asserts four arguments in support of its Motion to Dismiss: (1) it is not a person subject to suit under section 1983; (2) it does not meet the definition of "employer" for purposes

of CEPA; (3) the defamation claim does not satisfy pleading requirements; and (4) the defamation claim is barred by the statute of limitations. The Court addresses each argument in turn.

### 1.   Whether PBA May Be Subject to Suit Under 42 U.S.C. § 1983

First, PBA argues that the claims against it should be dismissed because it is not a person subject to suit under section 1983. (PBA Mot. to Dismiss at 3.) PBA asserts that "while individual members of [PBA] may qualify as persons . . . [PBA], as an entity, is not a 'person' and should be dismissed by the Court." (*Id.*)

As noted above, section 1983 only subjects "person[s] acting under color of state law" to liability. PBA's argument, relying primarily on *Fitzpatrick v. Wert*, 432 F. Supp. 601, 602 (W.D.N.Y. 1977), rests on whether it may be considered a "person" within the meaning of section 1983. In *Fitzpatrick*, the Western District of New York held that labor unions are not "persons," and therefore, they are not subject to section 1983 liability. *Id.* However, in reaching this decision, the court in *Fitzpatrick* relied on a case that has since been overturned by the United States Supreme Court. *See id.* (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 532 F.2d 259 (2d. Cir. 1976), *overruled by Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978)). Moreover, district courts in New York have since recognized that "the holding in *Fitzpatrick* is not good law," and instead have held that "labor unions are 'persons' subject to liability under [s]ection 1983." *Longi v. New York*, No. 02-5821, 2006 WL 8441210, at *20 (E.D.N.Y. June 26, 2006).

The more pertinent issue, however, is whether PBA, as a private entity, can be classified as "acting under the color of state law." To answer this question, the Court must determine whether PBA is a state actor. *Jackson v. Temple Univ.*, 721 F.2d 931 (3d Cir. 1983) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (noting that the ultimate issue "in determining whether a person is

subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the state?")). The Third Circuit has held that labor unions are generally not state actors—rather they are private entities. *See Johnson v. Int'l Broth. of Teamsters (Local 830)*, 256 Fed. App'x 481, 483 (3d Cir. 2007). However, this Court has held that labor unions may be considered state actors when "the unions have affirmatively conspired with the state to deprive a plaintiff of his rights." *See, e.g.*, *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 401 (D.N.J. 2008). In the Third Circuit, to state a claim for conspiracy under section 1983, "the plaintiff must make specific factual allegations of a combination, agreement, or understanding" among the defendants to "plot, plan[,] or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 185 F.2d 861 (3d. Cir. 1998).

Chief Beu pleads the following allegations to support a finding that PBA affirmatively participated in the conspiracy. The officers who sided with PBA were "commended and given rewards and promotions, while those who opposed PBA . . . were subjected to harassment and retaliatory acts." (Compl. ¶57.) A law firm sent a letter "on behalf of PBA" in an "effort to pressure Chief Beu[.]" (*Id.* ¶75.) "The PBA Letter was an effort by PBA Local 266 and City management to coerce and threaten Chief Beu to make" other individuals stop performing their duties. (*Id.* ¶ 77.) "PBA Local . . . created a draft complaint naming Chief Beu[.]" (*Id.* ¶85.) "The draft complaint contained numerous false and incorrect allegations regarding Chief Beu . . . specifically, among other things, falsely alleging that Chief Beu had committed criminal acts." (*Id.* ¶87.) "[I]n an effort to further retaliate against Chief Beu through harassment and intimidation, and attempting to force him to retire, City management in collusion with PBA Local 266, the individual defendants . . . and appointed officials[] began filing complaints with the CCPO against Chief Beu." (*Id.* ¶102.)

"City management, in collusion with PBA Local 266, leaked" defamatory information about Chief Beu "in an egregious and coordinated effort to discredit Chief Beu and force him to resign." (*Id.* ¶117.)

At the motion to dismiss phase, the Court finds that Chief Beu has pleaded sufficient allegations to state a claim against PBA. The aforementioned allegations, taken as true, assert that PBA conspired with the City Defendants—state actors—to deprive Chief Beu of federally protected rights. Chief Beu pleads that PBA and the City Defendants came to an agreement to harass, intimidate, and defame Chief Beu so that he would resign. The Complaint includes details of the specific actions taken by PBA. The Court finds that these allegations are enough to establish that PBA was acting under the color of state law. *See, e.g.*, *PFK Mark III Inc. v. Foundation for Faircontracting*, No. 08-1452, 2008 WL 5401626, at *1 (D.N.J. Dec. 23, 2008) (finding that plaintiff made sufficient factual allegations to support a finding that union acted under color of state).

The Court is in receipt of PBA's September 2, 2020 letter advising the Court of the recent decision in a related case, *Austino v. City of Vineland*, No. 20-1151, 2020 WL 5232489 (D.N.J. Sept. 2, 2020). In *Austino*, a Vineland Police Department officer sued a similar group of defendants, including PBA, for violation of his First Amendment rights under section 1983. *Id.* PBA moved to dismiss the claim against it, arguing, as it does here, that it is not a "person" subject to suit under section 1983. *Id.* After reviewing the Complaint, Judge Bartle found that the plaintiff's complaint contained "mere generalizations and broad conclusions" and "fail[ed] to provide 'specific factual allegations'" regarding PBA's participation in a conspiracy. *Id.* Accordingly, Judge Bartle found that that the plaintiff failed to establish that PBA was acting under the color of state law.

The Court finds that the present case is distinguishable. As discussed above, Chief Beu *does* allege specific facts about PBA's involvement in the purported conspiracy to retaliate against Chief Beu. The Court has also reviewed the plaintiff's complaint in *Austino.* That complaint contained few, if any, factual allegations against PBA. *See* Compl., Doc. 1, *Austino v. City of Vineland*, No. 20-01151 (D.N.J.). Rather, the plaintiff's only mention of PBA in the complaint was in conclusory paragraphs that merely recited the elements of a section 1983 claim. *See id.* Accordingly, while *Austino* is certainly persuasive given the factual similarity to this case, the Court finds that Chief Beu's Complaint is distinct because it pleads detailed factual allegations regarding PBA's involvement. Accordingly, at this stage, the Court rejects PBA's argument that it is not subject to suit under section 1983 and **DENIES** the Motion to Dismiss on this ground.

## 2.   Whether PBA May Be Subject to Suit Under CEPA

Second, PBA argues that the Court should dismiss Plaintiff's CEPA suit as to PBA because PBA is not Chief Beu's "employer" and therefore, it cannot be held liable under the CEPA. (Mot. at 6.) As noted above, CEPA only prohibits retaliation by an "employer" against an "employee." Courts in this district have consistently declined to impose CEPA liability on unions, instead holding that "there is nothing in [N.J.S.A. § 34:19] that indicates it encompasses labor unions." *Figueroa*, 580 F. Supp. 2d at 406; *Austino*, 2020 WL 5232489, at *3; *Skorka v. Kean Univ.,* No. 07–1629, 2007 WL 2915087 at *1 (D.N.J. Oct. 4, 2007) (CEPA does not "impose affirmative duties upon unions to protect employees from their employer's illegal discrimination."); *see also Mraz v. Local 254 of United Broth. of Carpenters & Joiners of Am.*, A-2424-13T4, 2014 WL 11210918 (N.J. Super. Ct. Apr. 6, 2016), *cert denied* 157 A.3d 838 (2016). The Court finds no reason to depart from these decisions now, as no allegations in the Complaint establish that PBA

is an entity acting directly or indirectly on behalf of the Vineland Police Department, with the Vineland Police Department's consent.

Chief Beu asks the Court to reject these prior opinions because this Court has previously held that "a union may be held liable under Title VII if the record demonstrated that the Union itself instigated or actively supported the discriminatory acts allegedly experienced by" the plaintiff. *Williams v. I.B.E.W. Loc. Sys. Council 7*, No. 16-5567, 2019 WL 1379881, at *1 (D.N.J. Mar. 27, 2019). Chief Beu asserts that, similarly, because PBA "took an active role in retaliating against Chief Beu," it should be subject to CEPA liability. The Court finds this argument unpersuasive. The Court's opinion in *Williams* was evaluating a claim under Title VII, not CEPA. Furthermore, Title VII specifically prohibits a "labor organization" from "discriminating against" any individual. 42 U.S.C. § 2000e-2(c)(1). Thus, the legislature in enacting Title VII specifically intended Title VII to encompass labor unions. Conversely, CEPA expressly limits its protections to actions by employers or those acting directly or indirectly on behalf of an employer. Although the New Jersey legislature could have extended the same obligations to labor unions, it chose not to include such language in the statute. Thus, the Court sees no reason to disturb prior rulings finding that labor unions are not considered employers under CEPA. Accordingly, the Court **GRANTS** the motion to dismiss the CEPA claim as to PBA.

### 3.   Whether the Defamation Claim Is Sufficiently Pleaded

Third, PBA argues that defamation claims are subject to a higher "fact pleading" requirement, and Chief Beu's claims fail to plead with specificity what defamatory statements PBA made. (PBA Mot. to Dismiss at 7.) In arguing that defamation is subject to heightened specificity, PBA cites to several decades-old New Jersey state court opinions applying New Jersey state law. However, this Court applies federal procedural law, and thus "federal pleading

standards—not New Jersey pleadings standards—govern the sufficiency of the Complaint." *Ciemniecki v. Parker McCay P.A.*, No. 09-6450, 2010 WL 2326209, at *4 (D.N.J. June 7, 2010); *see also Turk v. Salisbury Behavioral Health, Inc.,* No. 09–6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010) ("The federal pleading standards apply to state law claims asserted in federal court."); *James v. Morgan,* No. 2002/123, 2008 WL 5211408, at *3 (D. Vi. Nov. 5, 2008); *Palladino ex rel United States v. VNA of S. N.J., Inc.,* 68 F. Supp. 2d 455, 475 (D.N.J. 1999); *Joyce v. Alti Am., Inc.,* No. 00–5420, 2001 WL 1251489, at * 2 (E.D. Pa. Sept. 27, 2001).

Federal notice-pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The *Iqbal* pleading regime arguably increases the required specificity by insisting that the complaint contain enough factual matter to render the claim for relief plausible as opposed to merely possible. *See Fowler,* 578 F.3d at 210. Under New Jersey law, defamation consists of the following elements: (1) a defamatory statement; (2) concerning the plaintiff; (3) which was false; (4) that was communicated to someone other than the plaintiff; (5) with fault at least amounting to negligence; and (6) damages. *Cristelli v. Filomena II, Inc.,* No. 99–2862, 1999 WL 1081290, at *2 (D.N.J. Dec. 1, 1999) (citing *Monroe v. Host Marriott Serv. Corp.,* 999 F. Supp. 599, 603 (D.N.J. 1998)); *DeAngelis v. Hill,* 847 A.2d 1261, 1267–68 (N.J. 2004) (citing *Restatement (Second) of Torts,* § 558)).

PBA argues that while "Beu's complaint refers to 'untrue negative statements[,] . . . none are ever itemized." (PBA Mot. to Dismiss at 7.) In response, Chief Beu highlights allegations within his Complaint enumerating defamatory statements made by PBA. In particular, Chief Beu alleges that PBA "created a draft complaint" that "contained numerous false and incorrect allegations regarding Chief Beu . . . falsely alleging that Chief Beu had committed criminal acts." (Compl. ¶¶ 85, 88.) This draft complaint was circulated to other individuals on March 6, 2019.

14

(Opp. to PBA Mot. to Dismiss at 9.) Further, Plaintiff alleges that "[b]eginning in June of 2019, . . . City management in collusion with PBA Local 266 . . . began filing complaints with the CCPO against Chief Beu." (Compl. ¶102.) "To date, Plaintiff has been exonerated by the CCPO on each and every allegation." (*Id.* ¶104.) Further, Plaintiff alleges that "City management in collusion with PBA Local 266, leaked . . . a story detailing the false and defamatory allegations against Chief Beu" to NJ.com. (*Id.* ¶¶116–17.) Based on these allegations, Plaintiff has undoubtedly satisfied Rule 8's notice requirement. The Complaint pleads sufficient facts to put PBA on notice of the alleged defamatory statements. Moreover, taken as true, these allegations state a claim for defamation under New Jersey law.

PBA additionally argues that there is a one-year statute of limitations for defamation, and therefore "Beu cannot claim any statements made prior to March 6, 2019 as defamatory." (PBA Mot. to Dismiss at 8.) N.J.S.A. 2A:14-3 provides that "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." Chief Beu filed suit on March 6, 2020. (Doc. 1.) Accordingly, any defamatory statements made before March 6, 2019 are barred by the statute of limitations. That being said, the Court recognizes that the statements that Chief Beu alleges as defamatory all occurred on March 6, 2019 or later. To the extent any alleged defamatory statements occurred prior to March 6, 2019, the Motion to Dismiss is **GRANTED**. Otherwise, the Motion to Dismiss the defamation claim is **DENIED**.

### C.  Gelfand Motion to Dismiss

Mr. Gelfand asserts four arguments in support of his Motion to Dismiss: (1) the section 1983 count does not state a claim as to Mr. Gelfand; (2) he is not an "employer" subject to suit under CEPA; (3) the tort claims fail because Chief Beu failed to comply with the Tort Claims Act;

and (4) the Complaint does not state a claim for relief for conspiracy or defamation. The Court addresses each argument in turn.

### 1. Section 1983

Mr. Gelfand moves to dismiss the section 1983 claim against him based on three primary arguments: (1) he is not a state actor subject to section 1983 liability; (2) the Complaint does not allege a section 1983 claim as to Mr. Gelfand; and (3) Chief Beu's speech does not relate to a matter of public concern. The Court addresses the first two arguments.

#### *Whether Mr. Gelfand Was a State Actor*

Mr. Gelfand argues that he "is not an official or employee of [the] City of Vineland for purposes of the 'acting under color of state law' requirement," and instead he is a "private attorney who was retained to provide legal services to the City of Vineland." (Gelfand Mot. to Dismiss at 9.) Thus, Mr. Gelfand asserts that he cannot be held liable under section 1983. In response, Chief Beu argues that Mr. Gelfand's conduct is fairly attributable to the state, and therefore Mr. Gelfand is a state actor subject to section 1983 liability. (Opp. to Gelfand Mot. to Dismiss at 8.)

"Although there is no 'simple line' between state and private actors," the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.2d 636, 646 (3d Cir. 2009) (internal citations omitted). The Supreme Court and the Third Circuit have undoubtedly held that a lawyer "is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983." *Polk County v. Dodson,* 454 U.S. 312, 318–19 (1981); *Henderson v. Fisher,* 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam) (citing *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 355 (1974)). "Attorneys performing their traditional functions will not be considered state actors solely on the

16

basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.,* 184 F.3d 268, 277–78 (3d Cir. 1999). Moreover, the Third Circuit has held that "state action cannot be found when a private attorney is merely retained by a state government agency to perform his/her traditional functions." *Surina v. S. Bd. of Educ.*, No. 17-2173, 2018 WL 1327111 (D.N.J. Mar. 15, 2018) (citing *Yoder v. MacMain Law Group, LLC*, 691 Fed. Appx. 59, 60 (3d Cir. 2017)).

Mr. Gelfand was retained by the City of Vineland to render labor and employment advice. However, the law does not treat Mr. Gelfand as a state actor for purposes of section 1983 merely because he is an attorney or because he was retained by a governmental agency. Rather, Mr. Gelfand may only be held liable under section 1983 "if [he] ha[s] engaged in 'joint activity' with those Defendants who in fact *are* state actors." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 644 (E.D. Pa. 2014) (internal citations omitted) (emphasis in original).

The Third Circuit has articulated the three "broad tests generated by Supreme Court jurisprudence to determine when state action exists": (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) "whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.2d at 646. Under any test, the inquiry is fact specific. *Id.* Chief Beu primarily argues that the Court should find state action because (1) Mr. Gelfand conspired with state actors to retaliate against Chief Beu, and (2) Mr. Gelfand exercised powers that are traditionally the exclusive prerogative of the state. (Opp. to Gelfand Mot. to Dismiss at 9–10.)

As an initial matter, the Court finds the argument that Mr. Gelfand conspired with city officials unpersuasive. As discussed above, in order to properly plead a conspiracy, "a plaintiff

must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010). Additionally, "plaintiff must plead more than legal conclusions of a conspiracy or agreement." *Mikhail*, 991 F. Supp. at 645. Applying these concepts in this case, Plaintiff's allegations fail to establish that Mr. Gelfand conspired with state actors in a way which would establish joint activity. While Plaintiff's Complaint is lengthy, the Complaint contains only limited allegations specific to Mr. Gelfand, and even fewer allegations about Mr. Gelfand's interactions with state actors. Chief Beu pleads that Mr. Gelfand was "hired by the City of Vineland" (Compl. ¶96), which Chief Beu contends was for the purpose of "conduct[ing] a sham investigation in violation of N.J.S.A. 40A:14-181 and in violation of NJ Attorney General Guidelines." (*Id.* ¶100.) None of Chief Beu's allegations establish that Mr. Gelfand was a willful participant, acting jointly with the City to deprive Mr. Gelfand of his constitutional rights; indeed, there are no allegations of any pre-arranged plan. Rather, Plaintiff merely pleads in a conclusory matter that "Defendant Todd Gelfand is a private lawyer . . . who conspired with other Defendants . . . to suspend and demote Chief Beu, to place pressure on Chief Beu to resign, to reduce Chief Beu's pay, unfairly negotiate his contract, to create the false impression, among other things, that Chief Beu was insubordinate, and to smear Chief Beu's reputation." (*Id.* ¶15.) However, the Court cannot consider such conclusory allegations on a motion to dismiss. As such, without more, the Court finds that Plaintiff has failed to plead facts showing that Mr. Gelfand actively participated in a conspiracy with a state actor.

Chief Beu's second argument contends that Mr. Gelfand is a state actor because he "exercised powers that are traditionally the exclusive prerogative of the state." (Opp. to Gelfand Mot. to Dismiss at 9.) Chief Beu cites to N.J.S.A. 40A:14-181, which requires law enforcement agencies to "adopt and implement guidelines . . . consistent with the guidelines governing the

'Internal Affairs Policy and Procedures' of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety[.]" Chief Beu then cites to the Internal Affairs Policy and Procedures, which states that "[u]nder no circumstances may a law enforcement agency's internal affairs investigatory function be contracted or delegated to a private entity." Based on this statute and the accompanying guidelines, Chief Beu argues that conducting an internal affairs investigation of a law enforcement agency in New Jersey is an exclusive government function. (Opp. to Gelfand Mot. to Dismiss at 10.) Because Mr. Gelfand conducted an internal affairs investigation, an exclusive function of the government, Beu urges the Court to find that Mr. Gelfand is a state actor, subject to liability under section 1983. (*Id.*)

In analyzing whether one qualifies as a state actor under the public function test, the Supreme Court has held that "the relevant question is not simply whether a private group is serving a 'public function.'" *Rendell–Baker*, 457 U.S. at 842. Rather, the question "is whether the function performed has been *traditionally* the *exclusive* prerogative of the state." *Id.*; *see also Flagg Bros.*, 436 U.S. 149, 158 (1978). If the government delegates the operation of a traditional public function to a private person, that person will be subject to constitutional limitation. § 16.1(a)Central Theory, 2 Treatise on Const. L. § 16.1(a).

The Court notes that the exclusive public function test is difficult to satisfy because while many functions may be traditionally governmental, few are "exclusively" governmental functions as the test requires. *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1456 (10th Cir. 1995). The Supreme Court has found some functions are traditionally performed by the government, such as administering elections of public officials, *Terry v. Adams,* 345 U.S. 461,

19

468–70 (1953); the operation of a company-owned town, *Marsh v. Alabama,* 326 U.S. 501, 505–09 (1946); and the management of a city park, *Evans v. Newton,* 382 U.S. 296 (1966).

In a typical case where the "exclusive public function test" is at issue, the state has affirmatively, by statute or otherwise, delegated the performance of a specific task to a private party. However, this is not the typical case. In contrast, here, the state has *exclusively reserved* the performance of a specific activity—conducting internal affairs investigation of law enforcement agencies—to the state. The Court recognizes that internal affairs investigations are not typically the *exclusive* prerogative of the state, and courts have held as much. *See Caleb v. Grier*, 598 Fed. Appx. 227, 235–36 (5th Cir. 2015) (rejecting argument that internal investigation of employee misconduct are traditionally the exclusive prerogative of the state and noting that "the fact that a state elects to perform a public service itself does not make such a service 'traditionally the exclusive prerogative of the state.'"); *Carney v. Town of Weare*, No. 15-291, 2017 WL 680384, at *12 (D.N.H. Feb. 21, 2017); *Anderson v. Perhacs*, No. 11-289, 2013 WL 1336124, at *4–5 (W.D. Pa. Mar. 29, 2013); *O'Hanlon v. City of Chester*, No. 99-0664, 2002 WL 393122, at *4 (E.D. Pa. Mar. 12, 2002). However, none of those cases dealt with a statute that specifically reserved the power to conduct internal affairs investigations to the state. Rather, in those cases, a private individual was merely conducting an activity that the state could perform. *See, e.g.*, *Carney*, 2017 WL 680384, at *12 (finding that the parties failed to provide any analysis in support of their assertion that "internal investigations [are] a function traditionally and exclusively reserved to state government.") Conversely, the present case is distinguishable. Here, the New Jersey legislature and the New Jersey Attorney General have made the conscious decision to affirmatively reserve the power to conduct internal affairs investigations of police officers to the state.

There is little case law that directly addresses the impact of a statute delegating a function to the state. However, the Court finds the Third Circuit's reasoning in *Kach* insightful. 589 F.2d at 646. In *Kach*, the Third Circuit considered whether a school bus driver was a state actor for purposes of a section 1983 claim. *Id.* The plaintiff asserted that the bus driver was "performing an exclusive state function," citing to a Pennsylvania statute which authorized the state's Office for Safe Schools to create "[c]omprehensive, districtwide school safety and violence prevention plans." *Id.* at 647. The plaintiff asserted that the existence of this statute established that school security therefore was a traditional public function. *Id.* The court rejected this argument, noting that "nothing in [the statute's] plain language suggests that school security is the *exclusive province of the state*." *Id.* (emphasis added). The court observed that "the fact that Pennsylvania lawmakers have endowed a state agency with the power to address school violence surely does not make school security the exclusive province of the state." *Id.* at 647–48. Unlike *Kach*, here, New Jersey lawmakers *have* endowed local law enforcement agencies with the exclusive power to conduct internal affairs investigations. While the statute in *Kach* merely allowed the government to create comprehensive violence prevention plans, here, the agency guidance *mandates* that local law enforcement agencies conduct internal affairs investigations. This mandate takes this activity into the exclusive province of the state.

Accordingly, the Court finds that under these specific factual circumstances, conducting internal affairs investigations of police officers is an exclusive public function. Chief Beu pleads that Mr. Gelfand was indeed conducting an internal affairs investigation into Chief Beu. Taking these facts as true, as the Court must on a motion to dismiss, the Court finds that Chief Beu sufficiently pleads that Mr. Gelfand was engaging in an exclusive public function. As such, the Court finds that Mr. Gelfand is a state actor and may be subject to liability under section 1983.

However, Mr. Gelfand may re-raise this argument at summary judgment if discovery reveals that Mr. Gelfand was not in fact engaging in an internal affairs investigation.

### *Whether Chief Beu Pleads Sufficient Facts to State a Section 1983 Claim Against Mr. Gelfand*

Mr. Gelfand asserts that Chief Beu has failed to allege sufficient facts to state a Section 1983 claim against him because "Plaintiff does not allege factually anything Defendant Attorney Gelfand participated in which amounts to retaliation for purposes of a First Amendment retaliation claim[.]" (Gelfand Mot. to Dismiss at 17.) In response, Chief Beu makes general arguments about Gelfand's participation in a conspiracy to commit retaliation. (Opp. to Gelfand Mot. to Dismiss at 22.) However, as discussed above, the Court finds these allegations insufficient. The Complaint contains few specific allegations regarding Mr. Gelfand, his actions, and his individual role in the alleged conspiracy to retaliate against Chief Beu. Although Rule 8's pleading standards present a "low bar" as Chief Beu contends, the Complaint contains only conclusory allegations that Mr. Gelfand was involved personally in any act of retaliation. Without more, the Court finds that Chief Beu fails to state a claim against Mr. Gelfand. Accordingly, the Court **GRANTS** the motion and dismisses the section 1983 claim as to Mr. Gelfand **WITHOUT PREJUDICE**.[1]

### 2. CEPA Claim

Mr. Gelfand moves to dismiss the CEPA claim on two grounds: (1) Mr. Gelfand was not Chief Beu's employer or supervisor as defined by CEPA; and (2) an investigation of an employee is not an adverse employment action which can support a CEPA claim. (Gelfand Mot. to Dismiss at 18.) The Court first addresses Mr. Gelfand's argument that he is not an "employer" under CEPA.

---

[1] Mr. Gelfand also argues that the claim should be dismissed because Chief Beu was not engaged in protected First Amendment activity. Because the Court dismisses the claim on other grounds, the Court does not rule, at this time, on whether or not Chief Beu was engaged in protected First Amendment activity.

As noted above, "CEPA only prohibits retaliatory action against employees by their employers." *Figueroa*, 580 F. Supp. 2d at 406. The New Jersey Supreme Court has held that, in CEPA actions, "the employer is the party with the power and responsibility to hire, promote, reinstate, provide back pay, and take other remedial action." *Abbamont v. Piscataway Tp. Bd. of Educ.*, 650 A.2d 958, 964 (N.J. 1994.) It is clear here that Mr. Gelfand is not Chief Beu's employer, but rather is a private attorney retained by the City of Vineland. Neither party cites to a case where a court has affirmatively held that an attorney retained by an employer, such as Mr. Gelfand, may be held liable as an "employer" under CEPA. Nevertheless, this Court has previously held that CEPA may "create[] *individual* liability for agents of the employer, including supervisory employees." *Palladino ex rel. United States*, 69 F. Supp. 2d at 473 (emphasis added). This is because CEPA imposes liability on those that act "directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2a. Accordingly, in similar cases, this Court has declined to grant summary judgment in favor of individual defendants on these grounds, instead leaving the issue for a jury to determine. *See Dewelt v. Measurement Specialties, Inc.*, No. 02-3431, 2007 WL 542234 (D.N.J. Feb. 16, 2007); *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2003 WL 22145814 (D.N.J. Sept. 18, 2003).

Chief Beu argues that Mr. Gelfand may be subject to individual liability as an "agent" of the Vineland Police Department. While this *could* be true, the Complaint fails to allege sufficient facts to establish agency liability under CEPA. As noted throughout this Opinion, the references to Mr. Gelfand in the Complaint are sparse. Chief Beu alleges that "Mr. Gelfand had been assigned to investigate Chief Beu's multiple CEPA complaints of retaliation." (Compl. ¶95.) Mr. Gelfand was actually "hired by the City of Vineland[.]" (*Id.* ¶96.) Mr. Gelfand requested "files from Internal Affairs." (*Id.* ¶97.) And Chief Beu concludes that the "appointment of Mr. Gelfand [was]

to conduct a sham investigation[.]" (*Id.* ¶ 98.) Based on these allegations alone, the Court cannot find that Mr. Gelfand was in a supervisory position, was acting as an agent on behalf of the City of Vineland, or acted on behalf of the City of Vineland, with the City of Vineland's consent. Accordingly, because Chief Beu fails to allege sufficient facts to support a theory of agency liability, the Court **GRANTS** the Motion and dismisses the CEPA claim as to Mr. Gelfand **WITHOUT PREJUDICE**.

### 3.   Whether the Defamation and Conspiracy Claims State a Cause of Action

As to the defamation and conspiracy claims, Mr. Gelfand makes four primary arguments: (1) both claims should be dismissed because Chief Beu failed to comply with the Torts Claims Act; (2) both claims should be dismissed because Mr. Gelfand owed no duty to Chief Beu; (3) Beu does not plead facts to support that Mr. Gelfand was engaged in a conspiracy; and (4) Beu does not plead facts that Mr. Gelfand defamed Beu. The Court addresses each argument in turn.

#### *Whether Chief Beu Was Required to Comply with the Tort Claims Act*

As an initial matter, Mr. Gelfand argues that the defamation and conspiracy claims should be dismissed because Chief Beu failed to comply with the New Jersey Tort Claims Act notice requirements. (Gelfand Mot. to Dismiss at 20.) The New Jersey Tort Claims Act ("TCA") sets forth specific procedures that a party must follow if it wishes to bring a claim against a public entity or public employee. N.J.S.A. 59:8-3. If a court finds that the TCA applies, then the plaintiff is required to comply with the notice requirements set forth in the TCA. *See, e.g.*, *Masapollo v. Hunt*, No. 15-2270, 2016 WL 5402213, at *2 (D.N.J. Sept. 27, 2016).

Chief Beu argues that the TCA does not apply to Mr. Gelfand because (1) Mr. Gelfand was an independent contractor, and (2) the conduct occurred outside the scope of his employment or constituted a "crime, actual fraud, actual malice or willful misconduct." (Opp. to Gelfand Mot. to

Dismiss at 27.) Chief Beu also argues that even if "Gelfand is afforded protection under the TCA . . . then service to him may be effectuated through service to his employer." (*Id.* at 28.) Finally, Chief Beu asserts that the Court should refrain from deciding this question until after discovery has concluded. (*Id.* at 26.)

Under the TCA, a "[p]ublic employee means an employee of a public entity[.]" N.J.S.A. 59:1-3. An employee includes an "officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or services; provided, however, that the term does not include an independent contractor." *Id.* While municipal attorneys are generally considered to be public employees governed by the TCA, it is unclear whether an attorney retained by a city for a limited purpose is an employee. Rather, this inquiry requires the Court to conduct a fact-driven test to determine whether "a party is a public employee or independent contractor for purposes of the TCA[.]" *Masapollo*, 2016 WL 5402213, at *2.

Courts apply one of two tests to determine this inquiry: (1) the control test or (2) the relative nature of the work test. *Lowe v. Zarghami*, 731 A.2d 14, 16 (1999). Under the control test, the court must consider four factors to determine whether a worker is an employee or an independent contractor: (1) the degree of the control exercised by the employer; (2) the source of the worker's compensation; (3) the source of the worker's equipment and resources; and (4) the employer's termination rights. *Id.* Conversely, under the relative nature of the work test, the court considers the "extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." *Id.* at 16.

The Court finds that it would be premature to make a determination on whether Mr. Gelfand is a public employee or an independent contractor at this stage in the litigation. On a motion to dismiss, the Court may only consider facts included in the pleadings. The Complaint

25

does not plead facts sufficient to make a ruling on Mr. Gelfand's status. For example, the Complaint does not plead how much control the City of Vineland exercised over Mr. Gelfand, the source of Mr. Gelfand's compensation, or the relationship between Mr. Gelfand's work and the City of Vineland. It is unclear from the Complaint why the City of Vineland retained Mr. Gelfand, what his role was intended to be, and whether his internal affairs investigation went beyond that approved role. The only facts that the Court can discern from the Complaint is that (1) Mr. Gelfand is a private lawyer paid by the City of Vineland (Compl. ¶15); (2) Mr. Gelfand may have also been counsel for the insurance carrier (*id.* ¶92); and (3) the City allegedly maintained the appointment of Mr. Gelfand to conduct a sham investigation (*id.* ¶98.)

Without more, the Court cannot make a determination regarding whether Mr. Gelfand is a public employee or independent contractor. Nor can the Court determine whether Mr. Gelfand was acting beyond his approved capacity or outside the scope of his employment. Accordingly, the Court cannot determine whether Chief Beu was required to comply with the TCA in bringing suit against Mr. Gelfand. Thus, the Motion to Dismiss is **DENIED** on this ground. This denial, however, does not affect the ability of either side to file a motion for summary judgment at the appropriate time on these grounds. *See e.g.*, *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 136 (D.N.J. 2000) (finding that the court lacked sufficient facts at motion to dismiss stage to determine whether individual was employee or independent contractor and allowing parties to refile motion on this ground at summary judgment).

### *Whether Chief Beu Can Bring Claims for Defamation and Conspiracy Against Mr. Gelfand*

Mr. Gelfand next argues that Chief Beu cannot maintain his defamation and conspiracy claims because "an alleged aggrieved third party to an attorney client relationship cannot bring

any common law tort claim based upon the work of an attorney on behalf of the attorney's client." (Gelfand Mot. to Dismiss at 25.)

The Court finds that Mr. Gelfand's argument misstates the applicable law. Mr. Gelfand cites to *Green v. Morgan Properties* for the assertion that a plaintiff may not bring a claim against an attorney with whom there was no attorney-client relationship. (*Id.* at 26 (citing *Green v. Morgan Properties*, 73 A.3d 478.)) In *Green*, former tenants sought recovery from apartment management companies and the management companies' in-house counsel. 73 A.3d at 480. The tenants signed a lease provision which required them to pay attorneys' fees if the management company filed an eviction action against the tenant. *Id.* The tenants alleged that the attorneys fees were excessive and brought causes of action for (1) violation of the Anti-Eviction Act; (2) violation of the Consumer Fraud Act; and (3) negligent misrepresentation of the true amount of attorneys' fees. *Id.* at 481. *In the context of the negligent misrepresentation claim*, the court noted that New Jersey courts have been "reluctant to permit a nonclient to sue an adversary's attorney[.]" *Id.* at 495. This is because typically an attorney does not owe a duty to a non-client, and duty is a required element of a *negligence action*. *Id.* Notably, the court *did not hold* as Mr. Gelfand contends that an attorney can only rarely be sued by a plaintiff when there is no attorney-client relationship.[2]

The conspiracy and defamation claims are discussed at length *infra*. However, unlike a claim for negligence, claims for defamation and conspiracy have no duty requirement. Neither claim requires a plaintiff to prove that the defendant owed the plaintiff an obligation to engage in certain activities. Conversely, both defamation and civil conspiracy are intentional torts. The Court finds no reason to hold that an attorney may not be liable for intentional torts that he or she personally engages in. Accordingly, the Court rejects this argument.

---

[2] Similarly, the court's holding in *Banco Popular North America v. Gandi* was again in the context of a negligent misrepresentation claim. 876 A.3d 253, 264 (N.J. 2005).

### *Whether the Complaint States a Claim for Defamation*

Mr. Gelfand additionally argues that the Complaint fails to state a claim for defamation against him. (Gelfand Mot. to Dismiss at 30.) As discussed above, to bring a defamation claim under New Jersey law, a plaintiff must plead the following elements: (1) a defamatory statement; (2) concerning the plaintiff; (3) which was false; (4) that was communicated to someone other than the plaintiff; (5) with fault at least amounting to negligence; and (6) damages. *Cristelli,* 1999 WL 1081290, at *2. To satisfy the communication element of a defamation claim a plaintiff must plead facts that enable the defendant to identify the defamer and the circumstances of the publication. *Printing Mart–Morristown v. Sharp Elec. Corp.,* A.2d 31, 46 (N.J.1989). A plaintiff must plead "when, where, by which defendants and by what words, written or oral, plaintiff was defamed." *Zoneraich v. Overlook Hosp.,* 514 A.2d 53, 62 (N.J. Super. Ct. App. Div. 1991). Complaints that vaguely allege that defamatory statements were made to "third parties" are insufficient. *See Foy v. Wakefern Food Corp.,* No. 09–1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (complaint alleging defamatory statement to "third parties" dismissed).

The Court finds that Chief Beu's defamation claim as to Mr. Gelfand is subject to several flaws. Chief Beu's purported defamation claim arises from the Defendants' "communicat[ion] [of] untrue, negative statements about Chief Beu to numerous third parties, including local and national news outlets." (Compl. ¶30.) However, nothing in the Complaint avers that Mr. Gelfand was personally or individually involved in any alleged defamatory conduct. The Complaint does not plead that Mr. Gelfand ever made any such statements to third parties or news outlets. Chief Beu argues that he has stated a claim for defamation as to Mr. Gelfand because "Gelfand's investigation was *concurrent with* false accusations and complaints published about Chief Beu, including . . . accusations that he offered a fellow officer a promotion in exchange for sexual relations with his

wife and preteen daughter, and that he improperly refused to comply with an internal investigation." (Opp. to Gelfand Mot. to Dismiss at 29.) Accordingly, Chief Beu urges the Court to conclude that Mr. Gelfand was involved in the defamatory statements merely because Mr. Gelfand's investigation "occurred at the same time[.]" (*Id.* at 30.) However, these arguments are unsupported by the pleadings. Nothing in the Complaint itself indicates that Mr. Gelfand ever made any statements about Chief Beu related to the sexual harassment allegations or any failure to comply with an internal investigation. Without such allegations included in the Complaint, the Court cannot draw such conclusions on a motion to dismiss. Therefore, the Court **GRANTS** the Motion to Dismiss the defamation claim as to Mr. Gelfand **WITHOUT PREJUDICE**.

### *Whether the Complaint States a Claim for Conspiracy*

Mr. Gelfand argues that the conspiracy claim fails because the Complaint does not set forth the conspiracy elements as to Mr. Gelfand. (Gelfand Mot. to Dismiss at 29.) To state a claim for conspiracy under New Jersey law, a plaintiff must plead (1) combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, and (4) proof of special damages. *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. 14-3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018).

The Court finds that the Complaint fails to plead sufficient facts to establish a civil conspiracy claim as to Mr. Gelfand. None of the Complaint's allegations enumerate actions involving Mr. Gelfand. Rather, as discussed at length throughout this Opinion, the Complaint does not contain sufficient allegations to state a claim against Mr. Gelfand individually. It is difficult to discern from the Complaint precisely what role, if any, Mr. Gelfand had in the alleged conspiracy. The Complaint does not plead that Mr. Gelfand reached an agreement with any other Defendant, or that any such agreement had an unlawful purpose. Without these allegations, the Court cannot

find that Chief Beu has pleaded a conspiracy claim against Mr. Gelfand. As Federal Rule of Civil Procedure 8(a) demands that factual allegations "be enough to raise a right to relief above the speculative level," Plaintiff's civil conspiracy claim must be dismissed. *Bell Atlantic Corp.*, 550 U.S. at 555; *see also Harley v. City of New Jersey*, No. 16-5135, 2017 WL 2779466, at *12 (D.N.J. June 27, 2017) (dismissing a claim of civil conspiracy after finding that the plaintiff failed "to support his conspiracy claim with sufficient factual allegations" and had alleged "the conspiracy in a wholly conclusory fashion"); *Beauvil v. City of Asbury Park*, Civ. No. 18-991, 2018 WL 2455928, at *5 (D.N.J. June 1, 2018) (dismissing a civil conspiracy claim that contained only "conclusory allegations"). Accordingly, the Court **GRANTS** the Motion and dismisses the civil conspiracy claim as to Mr. Gelfand **WITHOUT PREJUDICE**.

## IV.   CONCLUSION

For the reasons contained herein, (1) PBA's Motion to Dismiss (Doc. 3) is **GRANTED IN PART** and **DENIED IN PART**; (2) Todd Gelfand's Motion to Dismiss (Doc. 17) is **GRANTED**; (3) the Motion to Amend (Doc. 37) is **GRANTED**; (4) and the City Defendant's Motion to Dismiss (Doc. 23) is **DENIED AS MOOT WITHOUT PREJUDICE**. Plaintiff may file a motion to amend his Complaint on or before January 4, 2021; any proposed amended complaint must comply with this Opinion and Federal Rule of Civil Procedure 8, and his motion must comply with Local Civil Rule 15.1. An accompanying Order shall issue.

Dated: 12/18/2020                                        /s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge