NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| RUDOLPH BEU, IV, | : | |
| Plaintiff, | : | Civil No. 20-02510 (RBK/AMD) |
| v. | : | **OPINION** |
| CITY OF VINELAND, *et al.*, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants Nicholas Maslanich and Vincent Donoflio's Motion to Dismiss (Doc. 36). For the reasons stated herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.   BACKGROUND**

**A.   Overview**

This action arises out of an employment dispute. Plaintiff is Rudolph Beu, the Chief of Police for the Vineland City Police Department during the relevant period. The Complaint names twelve defendants: Police Benevolent Association, the City of Vineland, Anthony Fanucci (Mayor of the City of Vineland), Gregory Pacitto (Sergeant), Edwin Alicea (Director of Public Safety), Ronald DeMarchi (Sergeant), Todd Gelfand (private attorney retained by the City of Vineland), Richard Tonetta (Solicitor), David Cavagnaro (Patrolman), Craig Scarpa (Lieutenant), and retired police officers Nicholas Maslanich and Vincent Donoflio. In short, Chief Beu alleges that the Defendants committed numerous acts of retaliation against Chief Beu after he reported unlawful

1

and unethical acts that he observed while working at the Vineland Police Department. Chief Beu alleges that these "retaliatory acts deprived" him of rights secured under the "First and Fourteenth Amendments . . . and the laws of the United States and the State of New Jersey." (*Id.* ¶1.) Chief Beu brings claims for (1) violation of 42 U.S.C. § 1983 ("section 1983"); (2) violation of New Jersey's Conscientious Employee Protection Act ("CEPA"); (3) conspiracy; and (4) defamation.

### B. Chief Beu's Reports

Chief Beu alleges that, over the past five years, he has reported a series of illegal and unethical practices by other Vineland Police Department and City employees. The relevant reports are as follows. First, in 2015, Chief Beu reported that several other police officers had embezzled funds from the Vineland Police Department for personal use. (Compl. ¶¶29–30.) Chief Beu reported this activity to the City of Vineland Business Administrator, the City Director of Public Safety, and the Cumberland County Prosecutor's Office. (*Id.* ¶31.) Second, in 2016, Chief Beu reported to investigative authorities that the Vineland Police Department Street Crimes Unit had engaged in a pattern and practice of improper conduct, including illegal strip searches, cavity searches, and false reports. (*Id.* ¶¶47–49.) Third, in 2017, Chief Beu reported that the City's Director of Public Safety, Defendant Alicea, had worked with the Mayor, Defendant Fanucci and the Solicitor, Defendant Tonetta, to cover up embezzlement by Vineland Police Department officers. (*Id.* ¶35.) Fourth, between November 2018 and September 2019, Chief Beu reported to the Cumberland County Police Department and the New Jersey Attorney General that the City of Vineland had engaged in insurance fraud and had submitted fraudulent documents to the state health benefits program. (*Id.* ¶83.)

### C. Allegations of Retaliation

Chief Beu alleges that after he reported the aforementioned activity, Defendants began retaliating against him. The acts of retaliation are summarized as follows. First, Chief Beu contends that several members of upper police management berated and harassed Chief Beu. (*Id.* ¶¶29–36.) Chief Beu also contends that Mayor Fanucci refused to sign Chief Beu's evaluation to end his probation period as Chief of Police. (*Id.* ¶¶59, 69.) PBA created a draft complaint against Chief Beu, which Beu contends contained false allegations stating that Beu had committed criminal acts. (*Id.* ¶85–91.) Chief Beu contends that the Vineland Police Department retained Mr. Gelfand to conduct a sham investigation related to the PBA draft complaint. (*Id.* ¶¶92–94, 98–100, 141.) Chief Beu alleges that he was subject to defamatory statements published in several newspapers that included false allegations against him. (*Id.* ¶¶111–23, 166.) Chief Beu asserts that the Defendants filed false complaints against him with the Cumberland County Prosecutor's Office in an effort to force him to retire. (*Id.* ¶¶101–03, 107.) Chief Beu alleges that the City failed to negotiate with him in good faith regarding his employment contract in an effort to force him to retire. (*Id.* ¶¶142–54.) Chief Beu asserts that another officer filed a civil suit against him, falsely alleging that Chief Beu made comments about promoting the officer in exchange for sexual relations with his wife and daughter. (*Id.* ¶¶135–40.) Finally, Beu alleges that the Vineland Police Department suspended him with a proposed demotion due to the allegations from the other officer, his refusal to turn over certain files, and an alleged conflict of interest. (*Id.* ¶¶154–64.)

**D. Allegations Specific to Defendants Maslanich and Donoflio**

The Complaint pleads that "Defendants Nicholas Maslanich, and Vincent Donoflio are retired police officers and members of relevant Union or Unions who participated in creating, wearing, promulgating and publicizing" defamatory t-shirts suggesting that "it would be prudent to 'lock up' 'wives' and 'kids' to protect them from Chief Beu." (*Id.* ¶16.) Chief Beu alleges that

3

in September 2019, retired officers Donoflio and Maslanich attended a public function wearing t-shirts with Chief Beu's picture on it. The picture was captioned "Mr. Beu, Hide your kids, Hide your wife." (*Id.* ¶126.) Chief Beu alleges that the t-shirt was a reference to a "very well-known internet meme about rape; thus, the implication is that if you aren't careful, Chief Beu will rape your wife and children." (*Id.* ¶126.) The Complaint pleads that Maslanich and Donoflio wore the t-shirts, posed for pictures with the PBA president, and then circulated the pictures on social media and via email. (*Id.*) Chief Beu also alleges that Defendants, with the knowledge of PBA Local 266, made and sold the t-shirt. (*Id.* ¶128.) Defendants allegedly also wore these shirts on several other occasions, including at a shooting range (*id.* ¶127) and a promotion ceremony (*id.* ¶132.)

## LEGAL STANDARD

### A. Motion to Dismiss

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## II. DISCUSSION

### A. Section 1983 Claim

Defendants Maslanich and Donoflio assert that the section 1983 claim should be dismissed because they are retired officers, and therefore they cannot qualify as individuals acting under color of state law. (*Id.*) In response, Chief Beu alleges that Defendants conspired and colluded with government officials. Therefore, Chief Beu argues that he "has sufficiently alleged joint action/conspiracy/collusion between Defendants Maslanich and Donoflio, both as individuals and as members of the PBA, and state officials[.]" (Opp. at 8.)

Section 1983 allows a plaintiff to bring a private cause of action for certain violations of his constitutional rights. Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

In order to state a claim for relief under section 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution or laws of the United States"; and (2) "the alleged deprivation was committed or caused by a *person* acting under color of state law." *Renwick v. U.C. Med. Dept.*, No. 10-6272, 2011 WL 1883810, at *2 (D.N.J. May 11, 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

"Although there is no 'simple line' between state and private actors," the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the

5

State itself." *Kach v. Hose*, 589 F.2d 636, 646 (3d Cir. 2009) (internal citations omitted). Under the conspiracy test, a private party may be viewed as acting under the color of state law if the private party has acted with the help of or in concert with state officials. *Id.* at 646. In the Third Circuit, to satisfy the conspiracy test, "the plaintiff must make specific factual allegations of a combination, agreement, or understanding" among the defendants to "plot, plan[,] or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 185 F.2d 861, 861 (3d. Cir. 1998). The "plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d 159, 178 (3d Cir. 2010). Importantly, the "plaintiff must plead more than legal conclusions of a conspiracy or agreement." *Mikhail v. Kahn*, 991 F. Supp. 596, 645 (E.D. Pa. 2014).

Applying these concepts in this case, Chief Beu's allegations fail to satisfy the requirements of the conspiracy test in the Third Circuit. While the Complaint contains numerous allegations against other Defendants and their interactions with PBA, the same cannot be said about the allegations specific to Defendants Maslanich and Donoflio. Rather, the allegations specific to their interactions with the state actor Defendants are limited. The Complaint establishes that Maslanich and Donoflio showed up to Vineland Police Department-sponsored events wearing the purportedly defamatory t-shirts. (Compl. ¶¶16, 126–27, 132.) Defendants Maslanich and Donoflio did this "with the knowledge of the PBA Local 266[.]" (*Id.* ¶128.) However, the Complaint does not plead any allegations establishing that Maslanich and Donoflio had an agreement or understanding with the state actor defendants. Nor do any of the allegations plead that Maslanich and Donoflio plotted, planned, or conspired with the state actor defendants to create or wear these t-shirts. Without such allegations, the Court cannot infer a conspiratorial agreement. *See Great W. Mining & Mineral Co.*, 615 F.3d at 178.

As such, without more, the Court finds that Plaintiff has failed to plead facts showing that Defendants Maslanich and Donoflio actively participated in a conspiracy with the state actor Defendants, and therefore they cannot be considered state actors for purposes of the section 1983 claim. Accordingly, the Court **GRANTS** the Motion to Dismiss the section 1983 claim **WITHOUT PREJUDICE**.

### B. CEPA Claim

Defendants next argue that the CEPA claim should be dismissed. Defendants Donoflio and Maslanich argue that, as retired police officers, they are not Chief Beu's "employer" and therefore, they cannot be held liable under CEPA. (Mot. at 10.) The New Jersey Conscientious Employee Protection Act ("CEPA") prohibits employers from taking any retaliatory action against an employee who reports on suspected illegal activity. N.J.S.A. 34:19-3. "However, CEPA only prohibits retaliatory action against employees by their employers." *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 406 (D.N.J. 2008). CEPA defines "employer" as the following:

> [A]ny individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof.

N.J.S.A. § 34:19–2(a). To state a CEPA claim, a plaintiff must plead the following: (1) he reasonably believed defendants were violating a law, rule, or public policy; (2) that he performed a whistleblowing activity as defined by N.J.S.A. 34:19–3; (3) that an adverse employment action was taken against him; and (4) that a causal relationship exists between the whistleblowing activity and the adverse employment action. *Puglia v. Elk Pipeline, Inc.*, 226 N.J. 258, 280 (2016).

The New Jersey Supreme Court has held that, in CEPA actions, "the employer is the party with the power and responsibility to hire, promote, reinstate, provide back pay, and take other remedial action." *Abbamont v. Piscataway Tp. Bd. of Educ.*, 650 A.2d 958, 964 (N.J. 1994.) However, this Court has previously held that CEPA may "create[] *individual* liability for agents of the employer, including supervisory employees." *Palladino ex rel. United States*, 69 F. Supp. 2d at 473 (emphasis added). This is because CEPA imposes liability on those that act "directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2a. Accordingly, in similar cases, this Court has declined to grant summary judgment in favor of individual defendants on these grounds, instead leaving the issue for a jury to determine. *See Dewelt v. Measurement Specialties, Inc.*, No. 02-3431, 2007 WL 542234, at *1 (D.N.J. Feb. 16, 2007); *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2003 WL 22145814, at *3 (D.N.J. Sept. 18, 2003).

Chief Beu argues that the Court should similarly find that Defendants Maslanich and Donoflio were acting as agents of the Vineland Police Department and therefore find that they are subject to liability under CEPA. The Court declines to do so. While CEPA liability may be imposed more broadly on individuals acting on behalf of the employer, none of the relevant case law has imposed liability on former employees as Beu requests here. Maslanich and Donoflio are retired officers who no longer work for the Vineland Police Department and were not employed by the Vineland Police Department during the events at issue. As such, they possessed no authority to take adverse employment action against Chief Beu. Moreover, the Complaint fails to allege that the Vineland Police Department vested Defendants Maslanich or Donoflio with authority to act as supervisory employees or otherwise serve as agents. Therefore, the Court is not inclined to hold that Maslanich and Donoflio can be liable under a statute that is intended to encompass employers'

actions. Finding otherwise would contravene the intent of CEPA, which is to protect employees from adverse actions by their employers. Accordingly, the Court finds that Defendants Maslanich and Donoflio cannot be subjected to CEPA liability. Accordingly, the motion to dismiss this claim is **GRANTED WITH PREJUDICE**.

### C. Defamation

Defendants Donoflio and Maslanich next move to dismiss the defamation claim. Under New Jersey law, defamation consists of the following elements: (1) a defamatory statement; (2) concerning the plaintiff; (3) which was false; (4) that was communicated to someone other than the plaintiff; (5) with fault at least amounting to negligence; and (6) damages. *Cristelli v. Filomena II, Inc.,* No. 99–2862, 1999 WL 1081290, at *2 (D.N.J. Dec. 1, 1999) (citing *Monroe v. Host Marriott Serv. Corp.,* 999 F. Supp. 599, 603 (D.N.J. 1998)); *DeAngelis v. Hill,* 847 A.2d 1261, 1267–68 (N.J. 2004) (citing *Restatement (Second) of Torts,* § 558)). Defendants Donoflio and Maslanich argue that the alleged activity pertaining to them does not rise to the level of actionable defamation. Specifically, Defendants assert that, while the "actions of wearing th[e] [t]-shirt may have been offensive to" Chief Beu, these actions do not "f[a]ll into the category of rhetoric that are" actionable as defamation because they amount to "mere insults and rhetorical hyperbole." (Mot. at 10–11.) In response, Chief Beu argues that the t-shirts "depicted Chief Beu as a pedophile and rapist, in furtherance of false allegations that Chief Beu solicited sex of a fellow officer's wife and minor child as a bribe for granting the officer a promotion." (Opp. at 20.) Therefore, the act of wearing the t-shirt rises to the level of actionable defamatory conduct.

The Court notes that "[a] defamatory statement is one that is false and injurious to the reputation of another or exposes the person to hatred, contempt, or ridicule or subjects another person to a loss of the good will and confidence in which he or she is held by others." *Petersen v.*

*Meggitt*, 969 A.2d 500, 507 (N.J. Super. Ct. App. Div. 2009) (internal quotations omitted). Determining whether a statement is defamatory requires the Court to consider "the content, verifiability, and context of the challenged statements." *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994). The verifiability determination goes to whether "the statement is one of fact or opinion, because statements of opinion and name-calling, which cannot be proved true or false, are not actionable." *Knierim v. Siemens Corp.,* No. 06–4935, 2008 WL 906244, at *15 (D.N.J. Mar.31, 2008) (internal citation omitted).

In line with the inquiry of whether a statement is "fact" or "opinion", the New Jersey Supreme Court has found that a "mixed opinion" is one that is "apparently based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication." *Kotlikoff v. The Comty. News,* 444 A.2d 1086, 1086 (N.J. 1982). Such mixed opinion statements can trigger liability if the statements "imply false underlying objective facts." *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1137 (N.J. 1999); *see also Ward v. Zelikovsky*, 643 A.2d 972, 975 (N.J. 1994) ("The higher the 'fact content' of a statement, the more likely that the statement will be actionable.") (citations omitted).

Here, the purportedly defamatory "statement" is a t-shirt that included Chief Beu's picture with the caption "Mr. Beu, Hide your kids, Hide your wife." (Compl. ¶126.) The Complaint alleges that this is a reference to a very well-known internet meme about rape. (*Id.*) Chief Beu alleges that the t-shirt "suggest[ed] it would be prudent to 'lock up' 'wives' and 'kids' to protect them from Chief Beu." (*Id.* ¶16.) The t-shirt coincided with other defendants' accusations that Chief Beu was an adulterer, pervert, and pedophile. (*Id.* ¶17.)

The Court finds that the inferences that Chief Beu is a pedophile or a rapist are not merely opinions but instead are statements of mixed opinion. It can be independently verified whether an

individual has in fact participated in acts that would render the individual a pedophile or a rapist. Therefore, these statements would be the type to imply false statements of objective fact. *See Lynch*, 735 A.2d at 1137. Moreover, in the Complaint, Chief Beu does allege that the County Prosecutor found the allegations that he was a pedophile or a rapist were unfounded and unsubstantiated. (*Id.* ¶157.) Therefore, the Court finds that, at this time, Chief Beu adequately pleads defamation—the implicit facts underlying the mixed opinion statements are specifically alleged and are capable of being proven objectively false by Chief Beu. *See Moe v. Seton Hall Univ.,* Civ. No. 09–1424, 2010 WL 1609680, at *8 (D.N.J.2010) (finding that alleged opinion statements that implied specific attributes about Plaintiff were sufficient to constitute defamation). Accordingly, the Court finds that Chief Beu has sufficiently alleged false and defamatory statements. The motion to dismiss this claim is **DENIED**.

### D. Civil Conspiracy

To state a claim for conspiracy under New Jersey law, a plaintiff must plead (1) combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, and (4) proof of special damages. *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. 14-3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018). Defendants argue that Chief Beu fails to plead conspiracy because he has not "allege, with sufficient detail, the creation of or existence of a conspiracy to commit an identifiable role." (Mot. at 12.) The Court agrees. The Complaint fails to include specific allegations establishing the existence of a conspiracy. There are few factual allegations related to Maslanich and Donoflio, and there are even fewer allegations related to any interactions between Maslanich and Donoflio and any other defendant. Without such allegations, the Court cannot find that an agreement existed with an

11

unlawful purpose. Accordingly, the civil conspiracy claim is **DISMISSED WITHOUT PREJUDICE**.

### E. CONCLUSION

For the reasons contained herein, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The claims for violation of section 1983 and conspiracy are dismissed without prejudice. The claim for violation of CEPA is dismissed with prejudice. The claim for defamation remains. Plaintiff may file a motion to amend his Complaint on or before March 22, 2021; any proposed amended complaint must comply with this Opinion and Federal Rule of Civil Procedure 8, and his motion must comply with Local Civil Rule 15.1. An accompanying Order shall issue.

Dated: 3/8/2021                                                                /s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge